**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **MAJID HOSSENI** | **CASE NO. 1:26-CV-00184 SEC P** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **WARDEN, ET AL** | **MAGISTRATE JUDGE LEBLANC** |

# REPORT AND RECOMMENDATION

Currently before the court is a petition for writ of habeas corpus filed by pro se petitioner Majid Hosseni ("Petitioner") on January 22, 2026, pursuant to 28 U.S.C. § 2241. Rec. Doc. 1. The Government filed a response on May 1, 2026. Doc. 17. The matter is ripe for review. For the reasons that follow, **IT IS RECOMMENDED** this habeas corpus petition be **GRANTED**.

## I. BACKGROUND

Petitioner is a native and citizen of Iran who was taken into U.S. Immigration and Customs Enforcement ("ICE") custody and placed in removal proceedings on June 20, 2024. He has remained in ICE custody since that date. *See* doc. 1, p. 4, ¶ 11; *see also* Declaration of Assistant Field Office Director Reaves, doc. 11-1, p. 1, ¶ 4. On February 19, 2025, an immigration judge ordered Petitioner removed from the United States to Iran but granted Petitioner relief in the form of deferral of removal to Iran under the Convention Against Torture, with the Department of Homeland Security ("DHS") reserving their right to appeal and the Petitioner waiving. *Id*. at ¶ 5; *see also* doc 11-1, pp. 6-11. DHS appealed the Immigration Judge's decision. The IJ's decision was ultimately affirmed by the Board of Immigration Appeals on July 30, 2025, which resulted in Petitioner having a final order of removal on that date. Doc. 11-1, p. 1, ¶ ¶ 6-8.

On October 2, 2025, ICE Enforcement and Removal Operations ("ERO") began the Petitioner's 90-day Post Order Custody Review. *See id*. at p. 2, ¶¶ 9-13. By December 24, 2025, the Decision to Continue Detention Letter was served on Petitioner. *See id*. at ¶ 13. On December 29, 2025, ERO Headquarters sent field operations an update that the Petitioner's case was still pending and that headquarters was currently actively working with the Department of State and DHS on avenues to remove Petitioner to a third country. *See id*. at ¶ 14. Next, on January 17, 2026, Petitioner's 180-day Post Order Custody Review began. *See id*. at ¶¶ 15-18. On January 27, 2026, his supervisory deportation and detention officer ("SDDO" or "DDO") requested Petitioner's 180-day Post Order Custody Review decision. *See id*. at p. 2, ¶ 16. On February 24, 2026, while petitioner's 180-day Post Order Custody Review was pending, ERO requested a status update on the Petitioner's third country removal. *See id*. at ¶ 17. On March 17, 2026, ERO headquarters requested Petitioner's 180-day Post Order Custody Review memorandum from ICE River Correctional Center staff. *See id*. at ¶ 18. On both April 7 and April 30, 2026, ERO sent inquiries to ERO Headquarters for an update on Petitioner's third country removal and advised headquarters that Petitioner has a valid passport. *See id*. at ¶¶ 19-20.

As of the date of this Report and Recommendation, Petitioner has been in post-removal-order custody for more than 11 months. Petitioner argues that his continued detention violates § 1231(a)(6) as interpreted by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not reasonably foreseeable given the grant of deferral of removal and the unlikelihood of removal to a third country. Under *Zadvydas* and the regulations implementing it, Petitioner asks the Court to order his immediate release under conditions of supervision.

The Government responded to the Petition arguing that Petitioner's detention is both lawful and constitutional, stating ICE has properly extended detention under § 1231 and the applicable

regulations due to the determination that Petitioner is likely to be removed in the reasonably foreseeable future and because he has not demonstrated that, if released, he will not pose a flight risk. Doc. 11, p. 8. They argue that Petitioner's "unsupported allegations that efforts to remove him to a third country will fail" do not lead to a reasonable inference that he has no significant likelihood of removal in the foreseeable future. *Id*. at p. 10.

## II. LAW AND ANALYSIS

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), and the extension of that decision by *Clark v. Martinez,* 543 U.S. 371 (2005), to aliens who are inadmissible, the United States Supreme Court adopted a six-month period for which detention of an alien, found within the United States and ordered removed pursuant to various provisions of Section 237(a) of the Immigration and Nationality Act [8 U.S.C. § 1227(a)], is presumptively reasonable, and concluded that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699. In the words of the Court:

> In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions. And if removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period.

*Zadvydas*, 533 U.S. at 699-700.

The Supreme Court clearly indicated that the lapse of the presumptive period does not mandate release and concluded that, "[t]o the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable

future." *Zadvydas*, 533 U.S. at 701. The United States Fifth Circuit Court of Appeals has recognized that "[t]he [Supreme] Court's decision creates no specific limits on detention, however, 'as an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future'." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006), *see also, Agyei–Kodie v. Holder*, 418 F. App'x 317, 318 (5th Cir. 2011).

Thus, to state a claim for relief under the *Zadvydas* decision, an alien must establish: 1) post-removal-order detention in excess of six months at the time of the filing of his or her petition; and 2) good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. *Andrade*, 459 F.3d at 543; *see also Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thereafter, "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. To meet his burden under the second prong, an alien's claim must be supported by more than mere "speculation and conjecture." *Idowu v. Ridge*, No. 03-cv-1293, 2003 WL 21805198, *4 (N.D. ex. Aug. 4, 2003) (citing *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002)). To shift the burden to the Government, an alien must demonstrate that "the circumstances of his status" or the existence of "particular individual barriers to his repatriation" to his country of origin are such that there is no significant likelihood of removal in the reasonably foreseeable future. *Id*. If the alien fails to come forward with an initial offer of proof, the petition is ripe for dismissal. *Akinwale*, 287 F.3d at 1051.

***A. Length of Detention***

An alien's post-removal-order detention under 8 U.S.C. § 1231 is limited to a period reasonably necessary to bring about that alien's removal from the United States. *Zadvydas,* 533 U.S. at 689. The Supreme Court has found that once the removal period begins, six months is a reasonably necessary period to remove the alien. *See id*. at 701. After six months, once the alien provides good

reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. *Id*. It is undisputed that Petitioner's detention has surpassed the six-month presumption of reasonableness under *Zadvydas*. Therefore, the analysis shifts to whether Petitioner's removal is foreseeable at present.

***B. Petitioner's Initial Burden***

The Government does not contest that Petitioner has been in custody beyond the presumptively reasonable six-month period. Instead, Respondents argue that Petitioner is not entitled to relief because the length of his detention is not unreasonable and because Petitioner fails to show good reason to believe that his removal to a third country is unlikely in the reasonably foreseeable future.[1]

It is undisputed that Petitioner's application for deferral of removal under INA § 241(b)(3) has been granted. Doc. 11-1, pp. 6-11. This deferment "is evidence of a clear institutional barrier to [Petitioner's] repatriation." *Rios v. Trump*, No.25-1320, 2026 U.S. Dist. LEXIS 62703**,** 2026 WL 810556, *4 (W.D. La. March 25, 2026) (citing *Hmung v. Bondi*, CIV-25-1303, 2025 U.S. Dist. LEXIS 261805, 2025 WL 3657221, at *3 (W.D. Okla. Dec. 9, 2025), *report and recommendation adopted*, 2025 U.S. Dist. LEXIS 260725, 2025 WL 3670499 (W.D. Okla. Dec. 17, 2025) (citations omitted) (collecting cases)). The Government represents that since Petitioner's removal order became final on July 30, 2025, ICE has been attempting to remove Petitioner to a third country. As of the most recent update on April 24, 2026, "ERO is still working on executing a third country removal." Doc. 11-1, p. 2, ¶ 20.

[1] To the extent the Government contends Petitioner is not entitled to relief because he has not demonstrated that he is not a flight risk (see doc. 11, p. 8), this argument fails as "dangerousness" and "flight risk" are not part of the *Zadvydas* analysis. *Zadvydas*, 533 U.S. at 690 (explaining that the Court has "upheld preventive detention based on dangerousness only when limited to especially dangerous individuals and subject to strong procedural protections."). There is no allegation that this Petitioner has ever been considered a danger to the community or a flight risk. Conversely, he has strong ties to the United States including his wife and family who are lawfully residing here.

As Petitioner has identified that he is not a citizen of any other country and ICE has not identified a third country that will accept him, the undersigned finds that he has met his initial burden under *Zadvydas*. *See Misirbekov v. Venegas,* No. 25-cv-168, 2025 U.S. Dist. LEXIS 166126, 2025 WL 2450991, at *1-2 (S.D. Tex. Aug. 15, 2025) (finding good reason to believe there was no significant likelihood of removal in the foreseeable future where the petitioner was granted Convention Against Torture withholding from Kyrgyzstan and had no citizenship or ties to any other country); *see also Leksina v. Rice*, No. 6:25-cv-1767, 2026 U.S. Dist. LEXIS 48728 (W.D. La. Jan. 23, 2026), *report and recommendation adopted*, 2026 WL 642195 (W.D. La. Mar. 6, 2026) (finding that Petitioner met her initial burden by identifying that she is not a citizen of another country and ICE has not identified a third country that will accept her).

***C. Respondents' Burden***

The burden thus shifts to Respondents, *Zadvydas*, 533 U.S. at 701, who argue that reasonably foreseeable future is not a static concept. Instead, they contend that "it is fluid and country specific, significantly depending on the diplomatic relations between the United States and the country that will receive the removed alien. The processes for obtaining a temporary travel document from another country are complex, multi-faceted, and include considerations of diplomacy that are beyond the control of ICE." Doc. 11, p. 9. Moreover, they assert that, even a "'lack of visible progress … does not in and of itself meet [the petitioner's] burden of showing that there is no significant likelihood of removal.'" *Id*. (citing *Khan v. Fasano*, 194 F.Supp.2d 1134, 1137 (S.D. Cal. 2001); *Idowu v. Ridge*, No. 03-cv-1293, 2003 WL 21805198, at *4 (N.D. Tex. Aug. 4, 2003)).

Courts in this District have held that the Government's burden to furnish evidence demonstrating that removal is likely in the reasonably foreseeable future is not met by a pending request for travel documents alone. *See, e.g., Johnson v. Young,* No. 12-cv-2339, 2013 U.S. Dist.

LEXIS 53326, 2013 WL 1571938, at *2 (W.D. La. Feb. 11, 2013) (finding argument that Jamaican consulate had not yet refused to issue travel documents insufficient to meet the government's burden), *report and recommendation adopted*, 2013 U.S. Dist. LEXIS 53313, 2013 WL 1571272 (Apr. 12, 2013); *Fermine v. Dir. of Immigr. & Customs Enf't*, No. 06-cv-1578, 2007 U.S. Dist. LEXIS 61516, 2007 WL 2284606, at *4 (W.D. La. May 23, 2007) (finding no significant likelihood of removal in the reasonably foreseeable future where ICE was continuing efforts to obtain a travel document and Trinidad had not yet refused the request); *see also Yaro v. Mukasey,* No. 5:08-cv-593-XR, 2008 U.S. Dist. LEXIS 88936, 2008 WL 4816657, at *3 (W.D. Tex. Oct. 30, 2008) (finding petitioner's removal likely in the foreseeable future where Malian embassy had not refused to issue travel documents or failed to respond to ICE, but instead acknowledged receipt of application and provided general timeline for investigation and decision). The undersigned finds these decisions persuasive—Respondents cannot carry their burden with the outstanding requests alone.

Moreover, the longer a request for travel documents remains pending without any action by the foreign government, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *See Zadvydas*, 533 U.S. at 701; *see also Young*, 2013 U.S. Dist. LEXIS 53326, 2013 WL 1571938, at *1-2 (finding removal not reasonably foreseeable where travel document request was pending for nine months); *Fermine*, 2007 U.S. Dist. LEXIS 61516, 2007 WL 2284606, at *4 (same, fifteen months).

The only evidence put forth by the Respondents in support of their position is the declaration of Matthew W. Reaves, Assistant Field Office Director ("AFOD") for ICE ERO at the New Orleans, Louisiana Field Office, who concedes that despite all attempts since July 30, 2025, to identify a third country for Petitioner's removal, it has failed to identify any possibilities, much less a country willing to accept him. *See* doc. 11-1, pp. 1-2. The Court finds, therefore, that even though "ICE is working

diligently with the Department of State and the Department of Homeland Security to find an appropriate third country for removal," it has failed to meet its burden. *See Rodriguez Romero v. Ladwig*, 2026 WL 321437, (M.D. La. Feb. 6, 2026) at *16 (stating that generalized "ongoing efforts to deport" to a third country are insufficient under *Zadvydas* to justify ongoing detention); *Uriostegui Rios v. Trump*, 2026 WL 810556 (W.D. La. March 24, 2026), at *2 (finding the government failed to meet its burden where "despite many requests, no country has agreed to accept [p]etitioner"); *Nuraetov v. Bondi,* No. 1:25-CV-1740, 2026 WL 878740, at *2 (W.D. La. Mar. 13, 2026) (finding that the government failed to meet its burden when there was "no affidavit, declaration, other evidence that a third country has been identified, contacted, or is considering a request from the Government to accept this petitioner and issue travel documents for his removal"), *report and recommendation adopted*, doc. 7 (W.D. La. Mar. 30, 2026); *Nguyen v. Bondi*, No. EP-25-cv-323-KC, 2025 WL 3120516, at *7 (W.D. Tex. Nov. 7, 2025) (requiring individualized evidence about the specific petitioner to demonstrate foreseeability of removal); *Marquez-Amaya v. Thompson*, No. 5:25-cv-1501, 2025 WL 3654327, at *6 (W.D. Tex. Dec. 15, 2025) (granting release where petitioner was "pending approval for removal to Mexico" with no specific removal plan in place); *Gomez-Simeon v. Bondi*, No. 25-cv-1460, 2025 WL 3470872, at *1, *5 (W.D. Tex. Nov. 24, 2025) (granting release where "Respondents have not identified a country willing to accept" the petitioner, who won Convention Against Torture and finding detention not justified in the absence of "a removal plan").

Under the circumstances of this case, the Court concludes that habeas relief is proper and *Zadvydas* requires Petitioner's release from his unlawful detention. The Court finds no need to address any other claim or challenge.

## III. CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the petition be **GRANTED** and Petitioner be **RELEASED**, subject to supervision under regulations prescribed by the Attorney General.[2]

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

**THUS DONE AND SIGNED** in chambers this 7th day of July, 2026.

**THOMAS P. LEBLANC**
**UNITED STATES MAGISTRATE JUDGE**

[2] 8 U.S.C. 1231(a)(3).